UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION -- LEXINGTON

| | |
|---|---|
| BUCK RYAN, | CIVIL ACTION NO. 5:19-188-KKC |
| Plaintiff, | |
| v. | OPINION AND ORDER |
| DAVID BLACKWELL, JOSEPH REED, DEREK LANE, and MIKE FARRELL, | |
| Defendants. | |

*** *** ***

This matter is before the Court on Defendants' motion to dismiss Plaintiff's complaint. Plaintiff Buck Ryan brought suit for damages under 42 U.S.C. § 1983, alleging violations of his constitutional rights; he also alleges violations of state law. (DE 1.) Defendants David Blackwell, Joseph Reed, Derek Lane, and Mike Farrell filed a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6). (DE 7.) For the reasons stated below, the Court grants Defendants' motion.

## Background

Plaintiff is a tenured member of the University of Kentucky faculty. (DE 1 at 1.) Sometime on or after April 30, 2018, Defendant Farrell, Interim Director of UK's School of Journalism and Media, and Dan O'Hair, then-dean of UK's College of Communication and Information, presented Plaintiff with an audit report produced by UK's General Counsel's office. (DE 1 at 1-2.) At the request of that office, Defendant Reed, an auditor for UK, conducted an investigation that culminated in this report and focused primarily on Plaintiff's use of his book *Writing Baby, Editing Dog and You: A Friendly Place to Begin Improving Your*

1

*Writing* ("*Writing Baby*") in his courses. (DE 1 at 5-6.) The report claimed that Plaintiff profited more than $6,000 from using *Writing Baby* in his courses. (DE 1 at 6.) Plaintiff responded to Defendant Farrell and Dr. O'Hair with a letter discussing the report's faults, its purportedly false and defamatory statements, and requesting that the report be voided. (DE 1 at 7.)

At a subsequent meeting, Dr. O'Hair demanded that Plaintiff resign his position, citing the report; although, the report did not recommend that Plaintiff resign. (DE 1 at 2, 7.) When Plaintiff refused, Defendant Blackwell, UK's provost, initiated administrative proceedings to terminate him. (DE 1 at 2, 7.) Defendant Blackwell also issued an allegedly false press release about Plaintiff, claiming that he had used university resources to steal from students. (DE 1 at 2.) In August 2018, UK's Senate Advisory Committee on Privilege and Tenure recommended that the termination proceedings be dropped. (DE 1 at 2-3, 8.) Plaintiff later publicly challenged Defendant Blackwell and UK president Eli Capilouto's purportedly baseless attempt to fire him; in response, Defendant Lane, Interim Dean of UK's College of Communication and Information, and Defendant Farrell allegedly retaliated against Plaintiff by making false and defamatory claims, removing his teaching responsibilities, and constructively discharging him from the faculty. (DE 1 at 3.) Plaintiff describes this series of conduct as efforts to coerce him to resign. (DE 1 at 14.)

Plaintiff filed suit in this Court on April 29, 2019. (DE 1.) The complaint alleges four counts of violations of federal or state law. First, Defendant Blackwell's statement was unconstitutional retaliation against Plaintiff for having asserted his due process rights. (DE 1 at 11-12.) Second, Defendant Blackwell's statement constitutes defamation. (DE 1 at 12.) Third, the audit report constitutes defamation and wrongly casts Plaintiff in a false light. (DE 1 at 12-13.) Finally, the efforts to coerce Plaintiff to resign were unconstitutional retaliation against Plaintiff for having asserted his rights to freedom of speech and due

process. (DE 1 at 13-14.) Defendants filed their motion to dismiss on May 24, 2019. (DE 7.) Defendants argue that Plaintiff has failed to state a claim under 42 U.S.C. § 1983 and, regardless, Defendants are entitled to qualified immunity. (DE 7 at 10.) Defendants also argue that, if Plaintiff's federal law claims are dismissed, the Court should decline to exercise supplemental jurisdiction over his state law claims. (DE 7 at 10.) Finally, all Defendants argue that even if the Court exercises supplemental jurisdiction over Plaintiff's state law claims, he has failed to state a claim against Defendants Reed or Blackwell. (DE 7 at 10.)

## Analysis

### I. Standard

To survive a Rule 12(b)(6) motion to dismiss, the complaint must assert sufficient facts to provide the defendant with "fair notice of what the… claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation and internal quotation marks omitted). A complaint must also "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A complaint should be dismissed pursuant to Rule 12(b)(6) only if there is no law to support the claims, if the alleged facts are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief." *Browning v. Pennerton,* 633 F. Supp. 2d 415, 429 (E.D. Ky. Jun. 22, 2009) (citing *Rauch v. Day & Night Mfg. Corp.,* 576 F.2d 697 (6th Cir. 1978)). "When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff." *Drain v. Nicholson*, No. 1:07-cv-690, 2008 WL 123881, at *1 (S.D. Ohio Jan. 10, 2008). "However, the Court need not accept as true legal conclusions cast in the form of factual allegations if those

conclusions cannot be plausibly drawn from the facts, as alleged." *O'Hair v. Winchester Police Dep't*, No. 5:15-cv-097-DCR, 2015 WL 4507181, at *2 (E.D. Ky. July 23, 2015).

**II. 42 U.S.C. § 1983 Claims**

42 U.S.C. § 1983 provides "a vehicle for a plaintiff to obtain damages for violations of the Constitution or a federal statute." *Boler v. Earley*, 865 F.3d 391, 401 (6th Cir. 2017). Under the law –

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. Plaintiff appears to allege multiple claims under § 1983, arguing that Defendants retaliated against him for having exercised his constitutional rights. "It is well established that government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right."[1] *Thaddeus-X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999). Plaintiff alleges that the following actions were all constitutional torts, taken in retaliation against him: the administrative proceedings to terminate his employment;

---

[1] Nowhere in the record is it disputed that UK is a public entity and that the conduct at issue constitutes government action. *See Hutsell v. Sayre*, 5 F.3d 996, 999 (6th Cir. 1993) ("That UK is considered an arm of the state under state law… is apparent from the statutory scheme which governs it."); *Hall v. Med. Coll. of Ohio at Toledo*, 742 F.2d 299, 301-02 (6th Cir. 1984) (collecting cases where public colleges and universities were found to be "arms of their respective state governments" for Eleventh Amendment immunity purposes).

4

Defendant Blackwell's public statement; and the efforts to coerce him to resign, including changes to his employment conditions. (DE 1.)

Three elements form the "essence" of retaliation claims: "the plaintiff engaged in conduct protected by the Constitution or by statute, the defendant took an adverse action against the plaintiff, and this adverse action was taken (at least in part) because of the protected conduct." *Thaddeus-X*, 175 F.3d at 386-87. Applying this standard, the Court finds that Plaintiff has failed to state any retaliation claims.

### A. Termination proceedings

In his complaint, Plaintiff alleges that Defendant Blackwell "inaugurated proceedings to abrogate Ryan's tenure and terminate his employment" in retaliation for his "refusal to resign his employment" and "his assertion of his due process rights."[2] (DE 1 at 7.) Essentially, Plaintiff asserts that Blackwell retaliated against him by initiating the very due process proceedings to which Ryan asserted he was entitled. (DE 7 at 12 n. 42.) In other words, Plaintiff argues that by instituting due process proceedings, Defendants violated his constitutional rights.

University "[p]rofessors with tenure or with a continuing contract may not be discharged without receiving a hearing in which they are informed of the grounds for their dismissal and given the opportunity to challenge the sufficiency of those grounds." *Johnston-Taylor v. Gannon*, 907 F.2d 1577, 1581 (6th Cir. 1990). Thus, Defendants could have possibly violated Plaintiff's due process rights had they not provided him with notice of discharge and

---

[2] Plaintiff's due process claims could only be procedural, not substantive. "[T]he termination of public employment does not constitute a denial of substantive due process unless there has been an infringement of some fundamental right," and the right to tenured employment is not fundamental. *McKenna v. Bowling Green State Univ.*, 568 F. App'x 450, 456 (6th Cir. 2014) (citations and internal quotation marks omitted).

5

an opportunity to be heard. The Court finds that Ryan's allegations of a constitutional tort to be without merit.

## *B. Blackwell's statement*

Plaintiff alleges that Defendant Blackwell's statement to the press[3] was made in retaliation for his refusal to resign his position. (DE 1 at 11-12.) Accordingly, the Court must determine whether Plaintiff's refusal to resign constituted an assertion of a due process right. Plaintiff's complaint makes clear that Ryan believes that his refusal to resign "constituted an assertion of his due process rights under the Fourteenth Amendment." (DE 1 at 7.) But due process rights are only that – rights to due process. The Fourteenth Amendment does not guarantee life, liberty, or property; it guarantees only that no State shall "deprive any person of life, liberty, or property, *without due process of law.*" U.S. CONST. amend. XIV, § 1 (emphasis added). "[T]he Due Process Clause provides that certain substantive rights… cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citations and internal quotation marks omitted); *see also Loudermill*, 470 U.S. at 542 ("We have described the 'root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing before he is deprived of any significant property interest.'" (citations omitted) (emphasis removed)).

---

[3] Plaintiff alleges that Blackwell "stat[ed] falsely to third parties in a press release issued by the University of Kentucky to at least the Lexington Herald-Leader that Ryan 'stole from students. And he used university resources to do it.'" (DE 1 at 2.)

6

Nowhere does Plaintiff actually allege that he requested the process due to him before his tenured position would be terminated. The closest the complaint comes to properly stating that Plaintiff asserted due process rights is the allegation that "Ryan's refusal to resign and assertion of his due process rights resulted in the termination effort by the university being referred to its Senate Advisory Committee on Privilege and Tenure." (DE 1 at 8.) But as the discussion above highlights, Plaintiff clearly viewed the termination proceedings as an unwanted procedure thrust upon him by Defendants. Further, Plaintiff never argues that this procedure was itself inadequate. The Court cannot accept the claim that Plaintiff requested due process when it is not properly alleged in the complaint, and will not infer such a request when Plaintiff simultaneously argues that the process he received was unwanted, constitutionally-violative, retaliatory conduct.

Due process is the salve that the Fourteenth Amendment provides to protect citizens from certain injurious State conduct. Plaintiff did not ask for relief but received it anyway, and claims that the prescription was poison even after it mitigated his ailment. He has failed to allege that he asserted his due process rights, and because of the complaint's logical enigmas, the Court cannot draw this inference in his favor; as a result, he has failed to assert a claim that Defendant Blackwell's statement was unconstitutional retaliation.

### *C. Efforts to coerce Plaintiff's resignation*

Plaintiff alleges that "defendants have continued their efforts to coerce Ryan to resign his employment as a tenured faculty member." (DE 1 at 14.) The complaint summarizes these efforts as follows: "Blackwell has never retracted his false statement that Ryan 'stole from students,' Reed has harassed Ryan by continuing his audit investigation and Lane and Farrell have stripped Ryan of his teaching responsibilities and substituted therefor duties of a type and nature as to constitute an adverse employment action and/or constructive

7

discharge from his employment as a tenured faculty member." (DE 1 at 14.) The complaint appears to allege that the conduct for which these allegedly retaliatory actions were taken includes Plaintiff's public statements, as well as the purported assertion of due process rights discussed above. (DE 1 at 13-14.)

*i. First Amendment claim*

Plaintiff alleges that Defendants retaliated against him for exercising his First Amendment right[4] to criticize Blackwell, Capilouto, and the termination proceedings "at public fora." (DE 1 at 9-10, 13-14.)[5] Defendants argue, *inter alia*, that Plaintiff "fails to establish that he engaged in protected speech." (DE 7 at 12.) Although "[a] government employee does not relinquish all First Amendment rights otherwise enjoyed by [private] citizens… a governmental employer may impose certain restraints on the speech of its employees." *City of San Diego, Cal. v. Roe*, 543 U.S. 77, 80 (2004). "The Court has made clear that public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006).

The threshold issue for a First Amendment retaliation claim brought under § 1983 is determining whether the plaintiff-employee's speech addressed a matter of public concern. *Van Compernolle v. City of Zeeland*, 241 F. App'x 244, 248-49 (6th Cir. 2007). As the Supreme Court held in *Connick v. Myers* –

---

[4] The First Amendment's protections of speech are applicable against the States through the Fourteenth Amendment's Due Process Clause. *Gitlow v. New York*, 268 U.S. 652, 666 (1925).

[5] According to Plaintiff, he "challenged and protested to Blackwell and Capilouto at public fora the initiation of the proceedings to terminate his tenure and employment." (DE 1 at 9.)

> when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

461 U.S. 138, 147 (1983). The *Connick* court further instructed that "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Id.* at 147-48. Therefore, before engaging in further constitutional analysis, the Court must determine whether the "content, form, and context" of the pleadings reveal that Plaintiff's statements addressed a matter of public concern. *See San Diego*, 543 U.S. at 82-83; *Connick*, 461 U.S. at 147-48; *see also Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 898 (6th Cir. 2001) ("Only if an employee can… prov[e] his or her speech was protected, should the court move on to determining whether the last two elements of a cause of action for retaliation—adverse action and motivation—are present.") Plaintiff carries the burden of proof on this issue. *See, e.g., Cockrel v. Shelby Cty. Sch. Dist.*, 270 F.3d 1036, 1048 (6th Cir. 2001).

When evaluating a Rule 12(b)(6) motion to dismiss, the Court must determine if the complaint alleges sufficient factual matter to state a plausible claim for relief, and the plaintiff must plead "factual content that allows *the court* to draw the reasonable inference that the defendant is liable for the misconduct alleged." *O'Hair*, 2015 WL 4507181, at *2 (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted) (emphasis added). Because "[t]he inquiry into the protected status of speech is one of law, not fact," any allegations that Plaintiff's statements were public in nature are legal conclusions, not facts.

9

*Connick*, 461 U.S. at 148 n.7; *see also Farhat v. Jopke*, 370 F.3d 580, 589 (6th Cir. 2004) ("Whether the speech at issue involves a matter of public concern is a question of law for the court, although there may be some factual questions for a jury if it is disputed whether the expressions occurred or what words were specifically stated." (citations omitted)). The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papsan v. Allain*, 478 U.S. 265, 286 (1986).

Plaintiff's complaint alleges that he "challenged Blackwell and university president Eli Capilouto as to why they attempted to fire him with no grounds to do so and defamed in [sic] this process." (DE 1 at 3.) He alleges that his statements regarded "the initiation of the proceedings to terminate his tenure and employment" which is "one of the most explosive internal issues at the University of Kentucky in years." (DE 1 at 9.) Plaintiff further maintains that his "protests, objections and speech" addressed "the unfounded and false grounds relied upon for the attempt to terminate his employment as a tenured faculty member." (DE 1 at 13-14.) Without referencing actual statements, Plaintiff also alleges that "[t]he proceedings to terminate [his] tenure and employment as a tenured faculty member became a widely-discussed issue," and, citing a news article which apparently reported that "UK faculty feel unrepresented in firing of tenured professor," that "[t]he efforts of faculty members at the University of Kentucky to communicate with its Board of Trustees regarding the effort to terminate Ryan's tenure and employment were obstructed by the University's General Counsel." (DE 1 at 9.) The complaint is otherwise short on details of what Plaintiff actually said. Nowhere in the pleadings is the content, form, or context of these statements discussed in any further, meaningful detail. *See Connick*, 461 U.S. at 147-48.

On only these bare facts, the law seems clear that the statements do not address matters of public concern. In *Connick*, the Court warned that "presum[ing] that all matters which transpire within a government office are of public concern would mean that virtually

10

every remark… would plant the seed of a constitutional case." 461 U.S. at 149. Rather, "[m]atters of public concern are those that can 'be fairly considered as relating to any matter of political, social, or other concern to the community[.]'" *Van Compernolle*, 241 F. App'x at 249 (quoting *Connick*, 461 U.S. at 146). On this question of public concern, the Sixth Circuit has explicitly contrasted "issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government" with "internal personnel disputes or complaints about an employer's performance." *Van Compernolle*, 241 F. App'x at 249 (citations and internal quotation marks omitted). "[I]nternal grievances that are purely personal in nature are not matters of public concern;" this generally includes grievances related to employee discipline. *Id.* at 250. This Court has previously held that where communications "were motivated by self-interest" they are "more akin to an internal dispute over a job than a plea of a concerned citizen to [his] government to follow proper procedures." *Litz v. Univ. of Ky.*, No. 5:11-CV-164, 2013 WL 2257697, at *6 (E.D. Ky. May 22, 2013) (quoting *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 965 (6th Cir. 2002)) (citation and internal quotation marks omitted).

Plaintiff's statements about his own termination proceedings seem inescapably personal in nature and self-interested. Even if Plaintiff's colleagues at UK have shown interest in, and have discussed, his termination proceedings (DE 1 at 9), that would not automatically convert an internal personnel issue into a matter of public concern. *See Van Compernolle*, 241 F. App'x at 250 ("A group effort to gain more overtime is no less an internal personnel dispute than if it were the effort of one officer.") If Plaintiff could show that he was "speaking as a citizen" and making statements not "pursuant to [his] official duties," that the content of his statements was something more than "employee beef," and concerned subject matter besides his employment, those factors would bend the analysis towards the opposite

11

direction. *Litz*, 2013 WL 2257697, at *6-*7 (citations and internal quotation marks omitted). But the complaint – which never makes clear what Plaintiff actually said – fails to do so. Removing its legal conclusions, Plaintiff's complaint lacks sufficient, relevant, factual content for the Court to conclude that his speech addressed a matter of public concern. As a result, he has failed to assert a claim that the efforts to coerce his resignation were unconstitutional retaliation for an exercise of his First Amendment rights.

In his response to Defendants' motion to dismiss, Plaintiff attempts to bolster his complaint by alleging additional facts. (DE 12.) As an initial matter, Plaintiff's response is not a pleading. *See* FED. R. CIV. P. 7(a) (identifying the pleadings allowed). Because "[a]ssessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings," *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016), Plaintiff cannot use his response to fortify the otherwise deficient factual content of his complaint against the motion to dismiss. Regardless, even if these additional facts were properly pleaded in the complaint, it is unlikely that they would compel a different outcome. In his response to Defendants' motion, Plaintiff cites the "substantial and continuing news interest" and "news coverage" of his termination proceedings, supposedly generated in part by UK press releases and Defendants' statements, as factual support for his argument that his speech, presumably about those proceedings, was on a matter of public concern. (DE 12 at 1, 5, 9.) The Court is unconvinced that news coverage of the termination proceedings necessarily renders the issue a matter of public concern for *Connick* purposes. *See Cockrel*, 270 F.3d at 1051 (noting, first, that "the issue of industrial hemp is politically charged and of great concern to certain citizens," and, second, "in the past year alone, industrial hemp advocacy in Kentucky has made news on several occasions") (internal quotation marks omitted). While the Supreme Court has held "that public concern is something that is a subject of *legitimate* news interest," *San Diego*, 543 U.S. at 83-84 (emphasis added), the word

"legitimate" should carry some weight in that standard. "[P]ublic concern is something that is… a subject of general interest and of value and concern to the public at the time of publication." *Id.* at 84. More than simply citing the breadth of news coverage, a complaint should establish a factual basis for determining that the content of the speech relates to "matter[s] of political, social, or other concern to the community," *Van Compernolle*, 241 F. App'x at 249 (quoting *Connick*, 461 U.S. at 146) (internal quotation marks omitted). The pleadings here do neither.

Elsewhere in his response, Plaintiff claims that "[t]he efforts to terminate Ryan have been of substantial and abiding concern in the university community calling into question the ordered governance of the institution" (DE 12 at 1-2); this is rephrased later as "substantial concerns in the university community including as to the governance of the institution by its Board of Trustees" (DE 12 at 9). These statements seem more like legal conclusions than factual allegations. Their only factual support appears to be a news article which Plaintiff filed as an exhibit to his complaint; he cited it there for its claim that "the effort to terminate Ryan's tenure and employment" was "[t]he most explosive internal issue in years." (DE 12 at 9; DE 1 at 9.) On its "[a]ssessment of the facial sufficiency of the complaint," the Court may – and does – consider this exhibit attached to the complaint without converting Defendants' motion into one for summary judgment because the exhibit is "referred to in the complaint and [is] central to the claims contained therein." *Gavitt*, 835 F.3d at 640. The Court has reviewed the exhibit along with the complaint and finds that even incorporating the article as part of his pleading's factual allegations leaves Plaintiff short of the mark.

*ii. Fourteenth Amendment claim*

Plaintiff also appears to argue that the efforts to coerce his resignation were taken in retaliation for the assertion of his due process rights. (DE 1 at 13-14.) However, because

13

Plaintiff has failed to properly allege an assertion of those rights, he has failed to state a claim that the efforts to coerce his resignation were unconstitutional retaliation for such assertions.

**III. State Law Claims**

28 U.S.C. § 1367(a) "grants a district court broad discretion to decide whether to exercise jurisdiction over state-law claims that are 'so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.'" *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (quoting 28 U.S.C. § 1367(a)). Pursuant to subsection (c), a court may decline to exercise supplemental jurisdiction over a state law claim when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996).

Because the Court will dismiss Plaintiff's federal law claims, it will decline to exercise supplemental jurisdiction over the remaining state law claims. Although there are "circumstances where a district court should retain supplemental jurisdiction even if all of the underlying federal claims have been dismissed," *Gamel*, 625 F.3d at 952, none are applicable here.[6] Plaintiff has not "engaged in forum manipulation by deciding to dismiss his federal-law claims," the parties have not "completed discovery," and there are no summary judgment motions "ripe for decision." *Id.*

---

[6] Plaintiff presents no argument as to why the Court should exercise supplemental jurisdiction over the state law claims if the federal law claims are dismissed. (DE 12 at 17.)

14

## **Conclusion**

Accordingly, the Court hereby ORDERS that:

1) Defendants' motion to dismiss (DE 7) is GRANTED;

2) a judgment will be entered contemporaneously with this order.

Dated November 18, 2019.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY